TOBY DEELYE COLE ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN OF
CORNWALL
(13714)

Dupont, C. J., and Schaller and Spear, Js.

Argued September 21, 1995—decision released March 5, 1996

*Ian A. Cole*, for the appellants (plaintiffs).

*Thomas P. Byrne*, with whom, on the brief, was *Steven E. Byrne*, for the appellee (defendant).

SCHALLER, J. The plaintiffs Toby deElye Cole, Sally deElye Cole and Lois Redington appeal from the judgment of the trial court affirming the defendant Cornwall planning and zoning commission's (commission) passage of an amendment to its zoning regulations. The plaintiffs[1] claim that the trial court improperly (1) concluded that the commission may enact a regulation that authorizes a special use permit that expires after a two year period, (2) concluded that the commission's amendment to its regulations does not violate a Torrington area health district regulation, (3) considered evidence obtained outside of public hearings, and (4) concluded that the amendment was in accord with a

---

[1] Ilyana Adams and Esther Kenny were also plaintiffs in this action, but did not join the appeal. We refer herein to Toby deElye Cole, Sally deElye Cole and Lois Redington as the plaintiffs.

comprehensive plan and reasonably related to the police power purposes enumerated in General Statutes § 8-2.[2] We affirm the judgment of the trial court.

The trial court found the following facts. On October 27, 1989, Lawrence Stevens and Victoria Stevens applied to the commission for a permit to construct a storage shed on property owned by Victoria Stevens in Cornwall. The commission learned, in considering the application, that the shed would be used to house a sawmill, and it would replace a sawmill already being operated on the premises by Lawrence Stevens. At the time of the application, Cornwall zoning regulations permitted the operation of permanent sawmills in residential districts by special exception only if a 500 foot setback requirement could be met. Because the existing sawmill did not satisfy the 500 foot setback requirement, Lawrence Stevens had to discontinue its use.

On October 11, 1990, and January 19, 1991, the commission held public hearings on proposed amendments to its regulations. On February 11, 1991, the commission amended article VIII of the Cornwall zoning regulations by adding new § 8.20.[3] Section 8.20.5 (a) reduced the

[2] General Statutes § 8-2 (a) provides in pertinent part: "[R]egulations shall be made in accordance with a comprehensive plan and in adopting such regulations the commission shall consider the plan of development prepared under section 8-23. Such regulations shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. . . ."

[3] Section 8.20 of the Cornwall zoning regulations provides in pertinent part: "Permanent Sawmill for Limited Commercial Use

".1 Statement of Purpose. The purpose of this amendment is to continue the policy of allowing commercial sawmills in the R-3 and R-5 Residential Zones under specific standards and requirements designed to limit the commercial use of a sawmill operation located in a residential zone and to minimize its impact on neighboring residential properties.

* * *

".5 Minimum Standards—Location and Operation

"a. The sawmill facility shall be defined as the saw and related equipment

setback requirement for permanent sawmills to 200 feet and classified permanent sawmills as a class C #83 (Forestry Activities) land use for the purpose of noise levels.[4] Section 8.20.9 further provided that special permits required to operate sawmills "shall be valid for a two-year period and may be renewed for additional two-year periods."[5]

Toby Cole, Sally Cole, Redington, Ilyana Adams and Esther Kenny appealed to the trial court from the commission's decision to amend the Cornwall zoning regulations. The trial court dismissed the appeal on December 30, 1991, on the ground that the plaintiffs had not established aggrievement. We reversed that judgment and remanded the case for a hearing on the merits. *Cole* v. *Planning & Zoning Commission*, 30 Conn. App. 511,

(such as, but not limited to: planer, edger) or the building enclosing the operation. Sawmills shall be classified as a Class C #83 (Forestry Activities) land use and the noise levels emanating therefrom must not exceed the decibel readings for such use established by the Torrington Area Health District Noise Control Regulations.

"b. It shall be the responsibility of the applicant to establish and maintain the sawmill facility in such a way that it will comply with the standards in the Noise Regulation. If necessary, noise reduction steps must be taken in order to comply with the standards. Prior to issuance of a Certificate of Zoning Compliance the Zoning Enforcement Officer shall request the Torrington Area Health District to certify compliance with its Noise Control Regulations. If any time the sawmill operation exceeds the maximum allowable noise level, the Zoning Enforcement Officer shall issue a cease and desist order.

"c. The sawmill building shall be set back a minimum of 200 feet from property lines located in residential zones and 75 feet from property lines located in the General Business or Industrial Zones. Where it is demonstrated that the adjoining property is State Forest land, the Commission may approve a minimum setback of 50 feet.

\* \* \*

".9 Permit and Enforcement

"a. The special permit shall be valid for a two-year period and may be renewed for additional two-year periods.

"b. The special permit may be revoked by a vote of the Commission after a Public Hearing called for due cause."

[4] See footnote 3.

[5] See footnote 3.

620 A.2d 1314 (1993). On November 22, 1993, the trial court held a hearing on the merits of the plaintiffs' appeal, and on April 6, 1994, the trial court rendered judgment in favor of the commission. We certified the plaintiffs' petition for appeal to this court.

I

The plaintiffs claim that the trial court improperly concluded that the commission may enact a zoning regulation that authorizes a special use permit that expires after a two year period.[6] The plaintiffs argue that the provision authorizing a limited special use permit is invalid because an owner of property has a vested right to put that property to a use allowed under a special exception if the regulatory requirements for issuance of the permit are satisfied. The plaintiffs further argue that because the special use permit provision is an essential part of the zoning regulation, it is not severable. The plaintiffs contend, therefore, that the entire regulation is invalid.

We first consider the commission's argument that this issue is moot because the commission repealed the two year limitation provision after the trial court decision. "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . *Grace Community Church* v. *Bethel*, 30 Conn. App. 765, 769, 622 A.2d 591, cert. denied, 226 Conn. 903, 625 A.2d 1375, cert. denied, 510 U.S. 944, 114 S. Ct. 383, 126 L. Ed. 2d 332 (1993). Mootness applies to situations where events have occurred during the pendency of an appeal that make an appellate court incapable of granting practical relief through a disposition on the merits. . . . Because

---

[6] Cornwall Zoning Regs., § 8.20.9 (a)

this court has no jurisdiction to give advisory opinions, no appeal can be decided on its merits in the absence of an actual controversy for which judicial relief can be granted. . . ." (Citation omitted; internal quotation marks omitted.) *Bakerville Lumber & Construction Co. v. Planning & Zoning Commission*, 38 Conn. App. 212, 213, 659 A.2d 758 (1995).

Both sides noted in their briefs that, on August 8, 1994, the commission further amended its regulations and removed the provision requiring special use permits for permanent sawmills to be renewed after a two year period.[7] The plaintiffs argue that pursuant to General Statutes § 8-2h (a), the removal of the special use permit provision from the regulation does not render this issue moot. We disagree.

Section 8-2h (a) provides in pertinent part that a zoning "application . . . which is in conformance with the applicable zoning regulations as of the time of filing shall not be required to comply with, nor shall it be disapproved for the reason that it does not comply with, any change in the zoning regulations . . . taking effect after the filing of such application." Nothing in the record indicates to this court that an application for a special use permit under Cornwall zoning regulation § 8.20 as originally enacted has been made.[8] The merits of a permit application with the commission are, therefore, not at issue. Instead, the plaintiffs' challenge con-

[7] Section 8.20.9 of the Cornwall zoning regulations had been renumbered § 8.23.9 prior to its being removed. The commission, therefore, removed § 8.23.9 from its zoning regulations on August 8, 1994. We continue to refer, however, to § 8.20.9 for purposes of this appeal.

[8] We note that on October 27, 1989, Lawrence Stevens and Victoria Stevens applied to the commission for a special permit to construct a storage shed. Because they filed the application before § 8.20 was originally enacted, however, the application does not require us to consider the validity of the amended regulation. Pursuant to General Statutes § 8-2h (a), the application would have to be considered according to the regulations existing prior to the adoption of § 8.20 by the commission.

cerns only the validity of the enactment of a zoning regulation by the commission. The plaintiffs' challenge of the special use permit provision, therefore, is not controlled by § 8-2h (a), and the regulation as amended on August 9, 1994 controls. " '[T]he repeal of an offending law or regulation or the cessation of a challenged activity [renders] an action to enjoin its enforcement moot . . . .' " *St. Pierre* v. *Solnit*, 233 Conn. 398, 401, 658 A.2d 977 (1995); see also *Rosnick* v. *Zoning Commission*, 172 Conn. 306, 309, 374 A.2d 245 (1977). We dismiss this issue as moot.[9]

## II

The plaintiffs next claim that the trial court improperly concluded that the designation of sawmills as a class C #83 (Forestry Activities)[10] land use by the commission does not violate the health district[11] noise control regulation. We find no merit in the plaintiffs' claim.

A "noise zone" under the health district noise control regulation is an individual unit of land, and noise zone classifications are based on the actual use of land. The regulation provides standard noise levels that may be emitted from each type of noise zone. The regulation does not, however, determine the manner in which individual units of land may be used. It is the function of the commission, in its legislative capacity, to regulate the actual use of land. General Statutes § 8-2; *Parks* v. *Planning & Zoning Commission*, 178 Conn. 657, 660, 425 A.2d 100 (1979); *Coastal Suburban Builders, Inc.* v. *Planning & Zoning Commission*, 2 Conn. App. 489,

---

[9] Because the regulation as amended on August 9, 1994, is controlling for purposes of this appeal we need not decide whether the original § 8.20.9 of the regulation is essential to and, therefore, nonseverable from the remainder of the regulation.

[10] See footnote 3.

[11] General Statutes § 19a-241 authorizes the formation of district departments of health by towns, cities and burroughs. Cornwall and neighboring towns have united to form the Torrington area health district.

492, 479 A.2d 1239 (1984). By amending its regulations pursuant to its legislative capacity, the commission did not violate the health district noise control regulation.

## III

The plaintiffs next claim that the commission denied them due process of law by considering evidence obtained outside the public hearings. The plaintiffs assert that the commission considered evidence obtained during a site inspection and evidence of technological advances that the plaintiffs did not have an opportunity to dispute or rebut. We find no merit in the plaintiffs' claim.

The following additional facts are relevant to our disposition of this issue. At the October 11, 1990 public hearing, the commission's chairwoman, Virginia Potter, stated that she had visited the Stevens' property to conduct readings of noise levels. Potter explained the method of taking the readings and the weather conditions at the time of the readings. Potter also referred to technological advances that had produced smaller, quieter equipment.

The plaintiffs argue that the commission failed to reveal the source of the information concerning technological advances, and did not provide the plaintiffs with an opportunity to witness the commissioner's gathering of evidence or to dispute the evidence acquired. "Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence." *Connecticut Fund for the Environment, Inc.* v. *Stamford*, 192 Conn. 247, 249, 470 A.2d 1214 (1984).

Zoning boards and commissions are entitled to receive technical and professional assistance, in execu-

tive session, on matters that are beyond their expertise. *Pizzalo* v. *Planning & Zoning Commission,* 167 Conn. 202, 208, 355 A.2d 21 (1974). Zoning boards and commissions may also visit sites. *Palmisano* v. *Conservation Commission,* 27 Conn. App. 543, 548, 608 A.2d 100 (1992), citing *Torsiello* v. *Zoning Board of Appeals,* 3 Conn. App. 47, 50, 484 A.2d 483 (1984).

The disclosure of the information concerning technological advances and of the site visit at the October 11, 1990 public hearing provided the plaintiffs with a full opportunity to cross-examine Potter. They also had the opportunity to rebut Potter's statement with their own evidence. The plaintiffs chose to forgo this opportunity at both the October 11, 1990, and the January 19, 1991 public hearings. " 'The principle requiring a testing of testimonial statements by cross-examination has always been understood as requiring, not necessarily an actual cross-examination, but merely an *opportunity to exercise the right to cross-examine* if desired.' " (Emphasis in original.) *Welch* v. *Zoning Board of Appeals,* 158 Conn. 208, 213, 257 A.2d 795 (1969), quoting 5 J. Wigmore, Evidence (3d Ed. 1940) § 1371; see also *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* 220 Conn. 527, 555, 600 A.2d 757 (1991). We conclude that the commission did not deny the plaintiffs due process.

IV

The plaintiffs claim finally that the trial court improperly concluded that the commission enacted § 8.20 in accordance with a comprehensive plan and pursuant to its police powers enumerated in General Statutes § 8-2. The plaintiffs argue that the record reveals that the commission abused its discretion by amending its zoning regulations to accommodate an individual property owner. We disagree.

On February 11, 1991, Potter stated the following rationale for the amendment to the commission's regulations. The commission "had become aware of the inadequacy of the regulation regarding permanent sawmills. There was only one requirement, the setback of 500 feet. The inadequacy was seen in two areas. One, technological advances have produced smaller, quieter milling equipment not recognized by the arbitrary setback, and, two, protection from dissimilar uses such as buffers, etc. were absent from that regulation. . . . Whereas the town plan contains recommendations to support this amendment, both to expand the opportunity for local employment by permitting small scale business activities in residential zones under standards which assure that such activities will be compatible with surrounding residential uses."

The parties do not dispute the trial court's finding that Potter's statement amounted to a "formal, official, collective statement of reasons" for the commission's actions. See *Caserta* v. *Zoning Board of Appeals*, 226 Conn. 80, 86, 626 A.2d 744 (1993). "Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The [amendment] must be sustained if even one of the stated reasons is sufficient to support it." (Internal quotation marks omitted.) *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 208, 658 A.2d 559 (1995).

We conclude, on the basis of our review of the record, that the commission acted in accordance with the Cornwall comprehensive plan and pursuant to its police powers enumerated in § 8-2. The plaintiffs' claim that the commission enacted § 8.20 of the zoning regulations to accommodate an individual property owner is not supported by the record. While we recognize that the

Stevens' application for a permit to construct a storage shed on their property led the commission to learn that Lawrence Stevens was operating a sawmill that did not comply with existing regulations, the record reveals that the commission's action in adopting the amendment fully complied with § 8-2. See *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* supra, 220 Conn. 546–47.

Our Supreme Court has held that the police power of "promot[ing] health and the general welfare"; General Statutes § 8-2; includes the prospect of producing economic benefits. *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* supra, 220 Conn. 550. The public hearings on October 11, 1990, and January 14, 1991, included discussions of the rural nature of the land in Cornwall, the benefits of making a living off the land, the validity of using land for forestry and sawmills, and the need for diversity as a key to agricultural survival in an area of small farms. From this evidence, the commission, quoting the town's comprehensive plan, reasonably could have found that amending its regulations served " '[t]o expand the opportunity for local employment by permitting small-scale . . . business activities in residential zones' " thereby producing economic benefits and promoting health and the general welfare.

In addition, the amendment conformed to the town's comprehensive plan. "The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the community." (Internal quotation marks omitted.) Id., 551. Section 8.20.1 provides: "The purpose of this amendment is to continue the policy of allowing commercial sawmills in the R-3 and R-5 Residential Zones under specific standards and requirements designed to limit the commercial use of a sawmill operation located

in a residential zone and to minimize its impact on neighboring residential properties."

The record reveals that the commission considered the noise levels of sawmills and how new technology has reduced the noise pollution and its impact on property values. The commission included within the amendment general standards for the location of a sawmill building; Cornwall Zoning Regs., § 8.20.6; outside storage areas; Cornwall Zoning Regs., § 8.20.7; and vehicular access and use. Cornwall Zoning Regs., § 8.20.8. The commission required that an individual who wants to operate a permanent sawmill apply for a special permit and that the application must include a detailed statement of use describing the operation; Cornwall Zoning Regs., § 8.20.2; in order to assist the commission in ensuring compliance with the regulation.

Under these circumstances, the record adequately supports the commission's assertion that it was enacting "standards which assure that such activities will be compatible with surrounding residential uses" and thereby in accordance with a comprehensive plan. *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, supra, 220 Conn. 552–53.

The judgment is affirmed.

In this opinion the other judges concurred.