KAREN A. GRIMES *v.* CONSERVATION COMMISSION
OF THE TOWN OF LITCHFIELD
(14698)

O'Connell, Lavery and Landau, Js.

Argued May 2—officially released September 24, 1996

*William C. Franklin*, for the appellant (plaintiff).

*Gail E. McTaggart*, for the appellee (named defendant).

*Kenneth R. Slater, Jr.*, for the appellee (defendant James B. Irwin).

LANDAU, J. The plaintiff, Karen A. Grimes, appeals from the judgment of the trial court dismissing her appeal from the decision of the defendant, the conservation commission of the town of Litchfield (commission).[1] The commission voted to approve five permit applications submitted by the intervening defendant, James B. Irwin (applicant),[2] in connection with his plan to develop a residential subdivision. On appeal, the plaintiff claims that the trial court improperly dismissed her appeal because (1) there was substantial evidence in the record to establish that the decision of the commission was unlawful because a commission member, who voted to approve the applications, had failed to attend a site visit and was, therefore, ineligible to vote, (2) the commission lacked jurisdiction in this matter because it failed to provide adequate public notice of

---

[1] The commission is the duly designated municipal agency for the town of Litchfield entrusted with the enforcement of the Wetlands and Watercourses Act, General Statutes §§ 22a-28 through 22a-45a.

[2] Irwin intervened as a defendant pursuant to Practice Book § 85 and General Statutes § 52-102.

a site visit,[3] (3) the commission received and considered evidence ex parte, thereby depriving the plaintiff of her right to due process, and (4) the commission failed to consider, pursuant to General Statutes § 22a-41, whether the development of a separate parcel of land owned by the applicant was a "feasible and prudent alternative" to the proposed action.

The following facts are pertinent to this appeal. The applicant is the owner of a 14.9 acre unimproved parcel of real property located on Hutchinson Parkway in the town of Litchfield. The plaintiff is an abutting property owner. On July 16, 1993, the applicant submitted several applications to the commission to obtain permits to conduct regulated activities on the subject property associated with the development of a proposed four-lot single family residential subdivision.[4] Public hearings concerning the applications began September 1, 1993. On September 14, 1993, after a public notice was posted in the town clerk's office, five members of the commission, together with Dennis McMorrow, the applicant's engineer, conducted a site visit to the subject property.[5]

[3] Although it is customary for inland wetlands commissions to make site visits; see, e.g., *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 628 A.2d 1286 (1993); *Palmisano* v. *Conservation Commission*, 27 Conn. App. 543, 608 A.2d 100 (1992); such visits are optional and usually take place after an application has been filed. The purpose of a site visit is to acquaint the members of a commission with the property at issue. See, e.g., *Manor Development Corp.* v. *Conservation Commission*, 180 Conn. 692, 701, 433 A.2d 999 (1980); *Torsiello* v. *Zoning Board of Appeals*, 3 Conn. App. 47, 50, 484 A.2d 483 (1984).

[4] The applicant requested permits to conduct the following regulated activities: (1) construction of a common driveway for lots 3 and 4 resulting in a wetlands disturbance limited to 0.04 acres; (2) correction of the existing pollution and erosion caused by the intermittent stream created from two drainage culverts off Hutchinson Parkway owned by the town of Litchfield; (3) construction of a home and septic system on lot 2 within 150 feet of a watercourse with no impact on wetlands or watercourses; and (4) construction of a septic system on lot 3 within 150 feet of a watercourse with no impact on wetlands or watercourses.

[5] The minutes of the site visit state in relevant part: "The site was walked from lots 1 to 5. The drainage watercourse on lot 1 was examined and

Following the site visit, additional public hearings were held on September 29, 1993, October 27, 1993, and November 17, 1993. On December 22, 1993, the commission voted to approve the applicant's proposal with certain modifications. Thereafter, the plaintiff appealed the commission's decision to the Superior Court claiming, inter alia, that the commission "acted arbitrarily, illegally and in abuse of its discretion." Upon finding that the commission's decision was supported by substantial evidence in the record, the trial court dismissed the plaintiff's appeal.

We turn first to the plaintiff's due process claim because our determination of that issue is dispositive of the appeal. The query in this claim is whether the commission deprived the plaintiff and the public of due process of law by failing to give them notice of the September 14, 1993 site proceedings. The plaintiff argues that the site visit in this case was an integral part of the hearing process and the manner in which notice was provided was fundamentally unfair. She asserts that the improper notice rendered the commission's decision invalid. We agree.

The plaintiff concedes that initially the commission provided proper notice pursuant to General Statutes § 22a-42a (c).[6] She further concedes in her brief that

alternatives were discussed. The other drainage through the property [was] also noted and discussed. The wetland crossing for driveways to lots 4 and 5 was noted and alternatives discussed."

[6] General Statutes § 22a-42a (c) provides in pertinent part: "On and after the effective date of the municipal regulations promulgated pursuant to subsection (b) of this section, no regulated activity shall be conducted upon any inland wetland and watercourse without a permit. Any person proposing to conduct or cause to be conducted a regulated activity upon an inland wetland and watercourse shall file an application with the inland wetlands agency of the town or towns wherein the wetland in question is located. . . . No later than sixty-five days after the receipt of such application, the inland wetlands agency may hold a public hearing on such application. *Notice of the hearing shall be published at least twice at intervals of not less than two days, the first not more than fifteen days and not fewer than ten days,*

"[o]ur case law does not require that notice of a public hearing originally and properly noticed pursuant to [§ 22a-42a (c)] be renoticed each and every time the public hearing is continued to a separate date." Nevertheless, she contends that, in this case, the notice for the site visit was defective because the commission, on September 1, 1993, explicitly continued the public hearing until September 29, 1993, without mention of the intervening site visit. She argues that "the public would have had to be clairvoyant to anticipate that the commission would provide notice of the site [visit] in a manner not authorized by [§ 22a-42a (c)]."

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* v. *Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). The problem with sufficiency of notice, under the due process clause, is sometimes a difficult one to solve. One must consider and balance the reasons behind the constitutional rule against the practical considerations. This tension makes it impossible to draw a standard set of specifications as to what is constitutionally adequate notice to be applied mechanically in every situation.

In actions involving inland wetlands and watercourses, § 22a-42a provides constructive notice that, it is conceded by all parties, passes constitutional muster.[7]

---

*and the last not less than two days before the date set for the hearing in a newspaper having a general circulation in each town where the affected wetland and watercourse, or any part thereof, is located. . . ."* (Emphasis added.)

[7] In planning and zoning matters, there is no doubt that official newspaper notice is sufficient notice. *Double I Ltd. Partnership* v. *Planning & Zoning Commission*, 218 Conn. 65, 588 A.2d 624 (1991).

The requirement that persons be notified of proceedings affecting their legally protected interests is obviously a vital corollary to one of the most fundamental requisites of due process—the right to be heard. "This right . . . has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane* v. *Central Hanover Trust Co.*, supra, 339 U.S. 314; see also *Winslow* v. *Zoning Board*, 143 Conn. 381, 389, 122 A.2d 789 (1956).

The parties agree that as to the meeting held on September 1, 1993, proper notice was provided. At the meeting, which was called to order at 7:04 p.m., the commission stated that it "is awaiting responses from the various agencies/staff that were asked to review and comment on [the subject] application," and "continued [the hearing] to September 29, 1993," recessing at 7:06 p.m. Thus, the parties and the interested public who were present were given actual notice of a continued hearing date. The plaintiff asserts, and we agree, that this actual notice given by the commission cannot be trumped by subsequent constructive notice posted in the town clerk's office, pursuant to General Statutes § 1-21,[8] prior to the site visit held on September 14, 1993.

At a meeting held on July 21, 1993, the commission discussed entering into a stipulated agreement as to a previous action commenced by the plaintiff involving an application concerning the same property.[9] The com-

---

[8] General Statutes § 1-21 (a) provides in pertinent part: "Notice of each special meeting of every public agency . . . shall be given not less than twenty-four hours prior to the time of such meeting by filing a notice of the time and place thereof in the office of . . . the clerk of such subdivision for any public agency of a political subdivision of the state and in the office of the clerk of each municipal member for any multitown district or agency. The secretary or clerk shall cause any notice received under this section to be posted in his office. Such notice shall be given not less than twenty-four hours prior to the time of the special meeting . . . ."

[9] *Grimes* v. *Conservation Commission*, Superior Court, judicial district of Litchfield, Docket No. CV92-0061101S (November 15, 1993).

mission agreed to enter into the stipulation permitting the trial court to render judgment for the plaintiff on the basis of inadequate notice. Therefore, it is beyond contradiction that, in this action, the commission had actual knowledge that the plaintiff had previously opposed a similar application and would have an interest in any further application. Indeed, the parties in the earlier appeal were proceeding to judgment during the same time that the application that forms the basis of this appeal was filed and heard.[10]

"The general rule that emerges from the *Mullane* case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Schroeder* v. *New York*, 371 U.S. 208, 212–13, 83 S. Ct. 279, 9 L. Ed. 2d 255 (1962). We certainly recognize the procedural impossibility of giving personal notice in some cases, such as those involving missing or unknown persons. But, the inadequacies of notice by publication also must be acknowledged. "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper . . . ." *Mullane* v. *Central Hanover Trust Co.*, supra, 339 U.S. 315.

This does not mean, however, that every member of the general public who attended the September 1, 1993 meeting should have been notified automatically either by letter, telephone or in person of the site visit. There is a distinction between those persons who are entitled to notice pursuant to § 22a-42a (c) and the plaintiff, whose strong interest and concerns were well known to the board. It is important to set out in our discussion

---

[10] Two motions for judgment on the stipulation were filed: one in August, 1993, and the other in September, 1993. Judgment was rendered on November 15, 1993.

just what is the issue. We do not address the commission's conduct at the site or the September 29, 1993 meeting, nor is it necessary to reach this question. Here, the issue is the validity of the notification to the plaintiff and whether it satisfied the fundamental fairness requirements of due process.

The principles of fairness and courtesy must govern the conduct of commissions and boards as well as that of courts, litigants and counsel. See *Sassone* v. *Lepore,* 226 Conn. 773, 777, 629 A.2d 357 (1993). Here, the commission's conduct did not comport with those principles. We should not condone a violation of the fundamental rules of natural justice. *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 249, 470 A.2d 1214 (1984). We conclude, therefore, that the action of the commission, after continuing the September 1, 1993 meeting to September 29, 1993, and, without notifying the plaintiff by letter or telephone or in person, scheduling a site visit at which it heard from the applicant's engineer falls short when measured against the rubric of due process and fundamental fairness.[11]

---

[11] We address the dissent persuaded that it perceives the issue incorrectly and, in doing so, travels down a path on which the majority will not tread, primarily because that issue is not placed before us. The dissent states that we hold "that due process was violated because a site visit by five members of the . . . commission . . . was held without adequate notice having been given to the plaintiff." This misstates our ruling and is incorrect. We rule only as to the fundamental fairness of the process utilized by the commission. We are not involved, as the dissent suggests, with the aspect of due process that pertains to the commission's consideration of evidence outside a public hearing. This is clearly demonstrated in the dissent's discussion of *Cole* v. *Planning & Zoning Commission,* 40 Conn. App. 501, 508–509, 671 A.2d 844 (1996), and *Palmisano* v. *Conservation Commission,* 27 Conn. App. 543, 545, 608 A.2d 100 (1992), to substantiate its position. In *Cole,* the issue we decided was whether "the commission denied [the plaintiffs] due process of law by considering evidence obtained outside the public hearings." *Cole* v. *Planning & Zoning Commission,* supra, 508. The same applies to the dissent's discussion of *Palmisano.*

Although the dissent correctly ends at a harmless error analysis, that analysis is inappropriate under the circumstances of this case because the

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal.

In this opinion O'CONNELL, J., concurred.

LAVERY, J., dissenting. I respectfully disagree with the majority opinion, which holds that due process was violated because a site visit by five members of the defendant conservation commission of the town of Litchfield (commission) was held without adequate notice having been given to the plaintiff. It is necessary to set forth additional facts found by the trial court as background for a full discussion of this issue. As stated in the majority opinion, the commission adjourned the public hearing on the permit applications on September 1, and continued it to September 29. On September 14, five members of the commission, along with the applicant's engineer and designated agent, Dennis McMorrow, visited the site. Since a majority of the commission members were walking the site together, the meeting was properly noticed and posted in the Litchfield town hall pursuant to the Freedom of Information Act in accordance with General Statutes § 1-21.

The minutes of the September 14 meeting reflect that "[t]]he site was walked from lots 1 to 5. The drainage watercourse on lot 1 was examined and alternatives were discussed. The other drainage through the prop-

violation affects rights essential to the fundamental fairness of the hearing; the very integrity of the process. Considerations of fairness, the integrity of the fact-finding process and the potency of our system of justice forbid a site visit where only one party and its witness are present and allowed to be heard. See *United States* v. *New York*, 434 F.2d 386, 389 (2d Cir. 1970). The violation is a matter of law, not an issue resting on factual considerations. See *State* v. *Varszegi*, 236 Conn. 266, 276 n.11, 673 A.2d 90 (1996), citing *Luce* v. *United States*, 469 U.S. 38, 44, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984) (Brennan, J., concurring). Due process, which involves fundamental fairness, is not left outside in the cold just because we are dealing with an administrative process rather than a liberty interest. See *Mathews* v. *Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

erty [was] also noted and discussed. The wetland crossing for driveways to lots 4 and 5 was noted and alternatives discussed." The transcript from the September 29 continued public hearing, held subsequent to the site visit, is replete with testimony regarding observations and communications relative to the site walk.

McMorrow's entire presentation at that hearing was limited to the discussion of existing drainage conditions, proposed drainage plans, alternatives to the proposed plans and the wetlands crossing for the common driveway. Specifically, McMorrow outlined the existing on-site drainage conditions and the applicant's proposed drainage plan. McMorrow also testified as to the proposed alternatives. With respect to the driveway crossing, McMorrow testified that the applicant's original plan resulted in the least impact on wetlands. At the commission's request, McMorrow went on to explain alternatives to the single crossing. The trial court found that "the commission did not receive communications without the opposition's knowledge and opportunity for explanation or rebuttal. The record makes clear that the material content of all observations and communications relative to the site walk summarized in the minutes were disclosed and discussed at the subsequent continued public hearing. Additionally, the plaintiff was provided with ample opportunity to rebut McMorrow's testimony."

In addition to the September 29 public hearing, the commission held hearings on October 27 and November 17. The plaintiff presented expert testimony from an engineer and a soil scientist as well as documents and reports to rebut the evidence of the applicant. In addition, the commission adopted the drainage plan proposed by the town engineer, Dave Thompson, in his September 29, 1993 report to Hiram Peck, the Litchfield land use administrator. The commission had no knowl-

edge of this plan at the time of its site visit. The plaintiff, therefore, cannot claim that the commission's failure to notify her of the site visit denied her the opportunity to respond to the plan eventually approved by the commission.

As our Supreme Court has noted, inland wetlands commissions are "composed of laymen whose procedural expertise may not always comply with the multitudinous statutory mandates under which they operate." *Gagnon* v. *Inland Wetlands & Watercourses Commission*, 203 Conn. 604, 611, 569 A.2d 1094 (1990). As stated in footnote 3 of the majority opinion, it is customary for these volunteer, lay inland wetlands commission members to make site visits. These visits are optional and usually take place after an application has been filed. The purpose of a site visit is to acquaint the members of a commission with the property at issue. In keeping with this general informality, site visits vary both as to the number of members making a visit, as well as the point of the process when the site visit takes place. For instance, in *Torsiello* v. *Zoning Board of Appeals*, 3 Conn. App. 47, 49, 484 A.2d 483 (1984), *"some members"* visited the site *after* the public hearing. (Emphasis added.) In *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 582, 628 A.2d 1286 (1993), the site visit occurred *before* the public hearing. In *Cole* v. *Planning & Zoning Commission*, 40 Conn. App. 501, 508, 671 A.2d 844 (1996), a *single* commissioner visited the site *before* the public hearing and, on her own, conducted readings of noise levels. In *Milardo* v. *Inland Wetlands Commission*, 27 Conn. App. 214, 218–19, 605 A.2d 869 (1992), three members visited the site *before* the public hearings. In *Palmisano* v. *Conservation Commission*, 27 Conn. App. 543, 545, 608 A.2d 100 (1992), *some* members visited the site *between* two public hearings. In this case, a majority of the members visited the site, which required compliance with the Freedom of Information Act. General Statutes § 1-21.

The majority, however, by requiring notice to parties of the site visit, is making site visits a continuation and part of the public hearing and thus infusing them with an unintended formality. I disagree. Query? If each of the five members visited the site on September 14 at different times, would the plaintiff, under the majority's reasoning, be entitled to notice of each site visit? Our paramount concern should be what it always has been: whether opponents to an application and the public have an opportunity to examine the evidence upon which the commission decides and to offer evidence in explanation or rebuttal. Our Supreme Court stated that "[i]f an administrative agency chooses to rely on its own judgment, it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal . . . ." *Feinson* v. *Conservation Commission*, 180 Conn. 421, 428–29, 429 A.2d 910 (1980). For instance, in *Cole* v. *Planning & Zoning Commission*, supra, 40 Conn. App. 508–509, the chairwoman of the commission visited the site on her own and conducted readings of the noise levels, and she so stated at the public hearing. Instead of focusing on the particulars of the site visit, this court ruled that the disclosure of the information gave the appellants the right to cross-examine and to offer rebuttal evidence. Id. The present case is no different, except that five members of the commission visited the site. They disclosed at the public hearing and through the minutes of the September 14 site visit what they saw and discussed. The plaintiff had the fullest opportunity during three public hearings to question the commissioners, cross-examine them and offer rebuttal evidence.

The plaintiff relies on *Palmisano* v. *Conservation Commission*, supra, 27 Conn. App. 548, for the proposi-

tion that an opponent to an application has the right to witness the site visit in order to dispute evidence that is gathered there. In that case, the commission received ex parte evidence regarding the location of a well in relation to the proposed septic system. That evidence was in opposition to the plaintiff's application and was received after the public hearing. In addition, at the site inspection, a commission member felt a pipe that she believed to be a well. *Palmisano* is easily distinguished from a present case. First, the plaintiffs in that case never had the opportunity to rebut the evidence received ex parte. Second, the commission in that case relied on a commissioner's knowledge not within her competence. Third, the site visit occurred after the public hearing had been concluded.

In the present case, there was full disclosure and full opportunity to question, cross-examine and rebut. The plaintiff presented voluminous testimony and evidence on the drainage and other issues.

I would not reverse on this issue, and I would review the other claims of the plaintiff.