## KAREN GRIMES *v.* CONSERVATION COMMISSION OF THE TOWN OF LITCHFIELD
## (AC 14698)

O'Connell, C. J., and Lavery and Landau, Js.

Submitted March 5—officially released June 16, 1998

*William C. Franklin,* for the appellant (plaintiff).

*Gail E. McTaggart,* for the appellee (named defendant).

*Kenneth R. Slater, Jr.,* for the appellee (defendant James B. Irwin).

*Opinion*

LANDAU, J. This matter is currently before us on remand from our Supreme Court. *Grimes* v. *Conservation Commission,* 243 Conn. 266, 703 A.2d 101 (1997). The plaintiff, Karen Grimes, appealed to this court from a judgment of the trial court dismissing her appeal from the decision of the conservation commission of the town of Litchfield[1] acting pursuant to the Inland Wetlands and Watercourses Act. General Statutes § 22a-36 et seq. A divided panel of this court reversed the judgment of the trial court, concluding that the plaintiff was given insufficient notice of a site visit that was performed by the commission on the applicant's property. *Grimes* v. *Conservation Commission,* 43 Conn. App. 227, 682 A.2d 589 (1996). Our Supreme Court granted the commission's petition for certification, limited to the following issue: "[D]id the Appellate Court properly conclude that the plaintiff was deprived of due process of law by the conduct of the conservation commission regarding its September 14, 1993 site visit?" *Grimes* v. *Conservation Commission,* 239 Conn. 944, 686 A.2d 121 (1996). Our Supreme Court reversed the

---

[1] The defendants are the conservation commission of the town of Litchfield (commission) and James B. Irwin (applicant), who intervened pursuant to Practice Book (1998 Rev.) § 9-6, formerly § 85, and General Statutes § 52-102.

judgment of the Appellate Court, concluding that the notice provided to the plaintiff was sufficient, and remanded the case for our consideration of the plaintiff's remaining claims. The plaintiff claims that the trial court improperly (1) found that a commission member who failed to attend the site visit was eligible to vote, (2) found that the public notice for the site visit was adequate to confer subject matter jurisdiction on the commission and (3) failed to require the commission to consider the entire property owned by the applicant when deciding whether a feasible and prudent alternative to his plan existed.

Our prior opinion summarizes the relevant facts. "The applicant is the owner of a 14.9 acre unimproved parcel of real property located on Hutchinson Parkway in the town of Litchfield. The plaintiff is an abutting property owner. On July 16, 1993, the applicant submitted several applications to the commission to obtain permits to conduct regulated activities on the subject property associated with the development of a proposed four-lot single family residential subdivision.[2] Public hearings concerning the applications began September 1, 1993. On September 14, 1993, after a public notice was posted in the town clerk's office, five members of the commission, together with Dennis McMorrow, the applicant's engineer, conducted a site visit to the subject property.[3]

---

[2] "The applicant requested permits to conduct the following regulated activities: (1) construction of a common driveway for lots 3 and 4 resulting in a wetlands disturbance limited to 0.04 acres; (2) correction of the existing pollution and erosion caused by the intermittent stream created from two drainage culverts off Hutchinson Parkway owned by the town of Litchfield; (3) construction of a home and septic system on lot 2 within 150 feet of a watercourse with no impact on wetlands or watercourses; and (4) construction of a septic system on lot 3 within 150 feet of a watercourse with no impact on wetlands or watercourses." Grimes v. Conservation Commission, supra, 43 Conn. App. 229 n.4.

[3] "The minutes of the site visit state in relevant part: 'The site was walked from lots 1 to 5. The drainage watercourse on lot 1 was examined and alternatives were discussed. The other drainage through the property [was] also noted and discussed. The wetland crossing for driveways to lots 4

Following the site visit, additional public hearings were held on September 29, 1993, October 27, 1993, and November 17, 1993. On December 22, 1993, the commission voted to approve the applicant's proposal with certain modifications. Thereafter, the plaintiff appealed the commission's decision to the Superior Court claiming, inter alia, that the commission 'acted arbitrarily, illegally and in abuse of its discretion.' Upon finding that the commission's decision was supported by substantial evidence in the record, the trial court dismissed the plaintiff's appeal." *Grimes* v. *Conservation Commission*, supra, 43 Conn. App. 229–30. This appeal followed.

I

The plaintiff first argues that the trial court improperly found that a commission member who failed to attend the site visit was eligible to vote. The plaintiff argues that the commission member's disqualification would have caused the number of voting members to fall below the number required to constitute a quorum, thereby rendering the vote void. We disagree.

Additional facts are necessary to a resolution of this issue. Fred J. Minck, a member of the commission, voted to approve the application in the present case. Minck did not attend the site visit that occurred on September 14, 1993. Minck did, however, review the minutes of the site visit. Minck testified that he had attended a site visit to the same property in connection with a prior application by the applicant in the present case.

On appeal, our Supreme Court discussed site visits. "Although site visits are not required by the act, we have recognized that they may be necessary for commissioners thoroughly to evaluate property that is the subject of an application. *Manor Development Corp.* v.

and 5 was noted and alternatives discussed.' " *Grimes* v. *Conservation Commission*, supra, 43 Conn. App. 229–30 n.5.

*Conservation Commission,* 180 Conn. 692, 701, 433 A.2d 999 (1980) (responsibilities conferred on commission by act necessitate site inspection); see also *Samperi* v. *Inland Wetlands Agency,* [226 Conn. 579, 582, 628 A.2d 1286 (1993)]. Commissioners are permitted to base their decisions in part on facts within their 'peculiar knowledge,' including information gleaned from a site inspection, as long as those facts are disclosed to the parties. *Manor Development Corp.* v. *Conservation Commission,* supra, 701–702; see also *Huck* v. *Inland Wetlands & Watercourses Agency,* [203 Conn. 525, 547, 525 A.2d 940 (1987)] ('[k]nowledge obtained through personal observations of the locus may properly be considered by the agency'). A site visit is therefore an appropriate investigative tool.

"As the Appellate Court stated, and we agree, '[t]he purpose of a site visit is to acquaint the members of a commission with the property at issue.' *Grimes* v. *Conservation Commission,* supra, 43 Conn. App. 228 n.3. By contrast, the purpose of a hearing is to afford the parties the opportunity to present and to rebut evidence upon which the commission relies in reaching its decision. See General Statutes § 22a-42a (c) (1); *Huck* v. *Inland Wetlands & Watercourses Agency,* supra, 203 Conn. 536; *Connecticut Fund for the Environment, Inc.* v. *Stamford,* [192 Conn. 247, 249, 470 A.2d 1214 (1984)]. Investigative procedures, such as site inspections, therefore, are not an integral part of the hearing process, although the agency must disclose to the parties any information relied upon in reaching a decision so that they may comment upon it." *Grimes* v. *Conservation Commission,* supra, 243 Conn. 277–78. Our Supreme Court then concluded that "the September 14, 1993 meeting was neither a hearing nor an integral part of the hearing process . . . ." Id., 279.

The cases the plaintiff cites allow a commissioner who misses a *hearing* to vote "if he acquaints himself

sufficiently with the issues raised, the evidence presented and the arguments made during his absence so that he can make an informed judgment." *Brunswick* v. *Inland Wetlands Commission*, 29 Conn. App. 634, 640–41, 617 A.2d 466 (1992), citing *Dana-Robin Corp.* v. *Common Council*, 166 Conn. 207, 216–17, 348 A.2d 560 (1974). Unlike the cases cited by the plaintiff, in which members voted after missing a hearing, Minck failed to attend a site visit that our Supreme Court specifically classified as a meeting rather than a hearing. Because the site visit was not a hearing or an integral part of the hearing process, the case law on the subject does not specifically extend to such a meeting.

Even if Minck was required to become sufficiently informed so as to be able to make an informed judgment regarding the site visit, it was the plaintiff's burden to prove that Minck did not sufficiently acquaint himself with the appropriate information to make an informed judgment. *Dana-Robin Corp.* v. *Common Council*, supra, 166 Conn. 217. Minck testified that he reviewed the minutes of the site visit. He further testified that he had attended a site visit to the same property on a prior occasion. The trial court concluded, and our Supreme Court agreed, that the material contents of the site visit were discussed through testimony at the subsequent public hearing, where the plaintiff was afforded an opportunity to rebut the testimony. As a result, even if we required commission members to acquaint themselves sufficiently with the issues, evidence and arguments during a meeting other than a hearing, the plaintiff has not met her burden of proving that Minck failed to do so.

II

The plaintiff next argues that the trial court improperly found that the public notice for the site visit, which was posted in the town clerk's office, was adequate to

confer subject matter jurisdiction on the commission. The plaintiff argues that General Statutes § 22a-42a (c)[4] does not authorize notice of a "public hearing" to be provided simply by posting notice in the town clerk's office, and, as a result, the notice was defective. We disagree.

Our Supreme Court held that the site visit was "neither a hearing nor an integral part of the hearing process . . . ." *Grimes* v. *Conservation Commission*, supra, 243 Conn. 279. The court reasoned that the plaintiff failed to meet her burden of proving that the site visit was a hearing so as "to avail herself of the more stringent notice requirements of § 22a-42a." Id., 278. As a result, we conclude that the notice provided by the commission was sufficient and did not defeat the commission's subject matter jurisdiction.[5]

### III

The plaintiff's final claim is that the trial court improperly failed to require the commission to consider the "entire" property owned by the applicant in deciding whether a feasible and prudent alternative to his plan existed.[6] In making this determination, the plaintiff argues that a separate parcel of land, also owned by

[4] General Statutes § 22a-42a (c) (1) provides in relevant part: "Notice of the hearing shall be published at least twice at intervals of not less than two days, the first not more than fifteen days and not fewer than ten days, and the last not less than two days before the date set for the hearing in a newspaper having a general circulation in each town where the affected wetland or watercourse, or any part thereof, is located. . . ."

[5] Because we conclude that notice was sufficient, we need not discuss the plaintiff's additional argument that the trial court improperly prevented her from offering evidence to show that she was denied access to the site visit due to lack of notice.

[6] The plaintiff concedes that, if the applicant owned only the 14.9 acre parcel of land to which the plan applied, rather than his entire ownership consisting of 83.5 acres, the commission properly found that there was no feasible and prudent alternative. Therefore, we must decide only whether the commission must consider the entire property owned by the applicant when determining whether a feasible and prudent alternative exists.

the applicant, which adjoins the parcel of land at issue in the present case, should have been considered by the commission.[7] We disagree.

Pursuant to General Statutes (Rev. to 1993) § 22a-41 (b), the commissioner must find that a "feasible and prudent" alternative to the applicant's development plan does not exist before issuing a permit. In making this finding, the commissioner "*shall* take into consideration *all relevant facts and circumstances, including but not limited to*" the six statutory factors in determining whether a feasible and prudent alternative exists. (Emphasis added.) General Statutes (Rev. to 1993) § 22a-41 (a).[8] The plaintiff relies on our decision in *Hoffman* v. *Inland Wetlands Commission*, 28 Conn. App. 262, 267, 610 A.2d 185, cert. denied, 223 Conn. 925, 614 A.2d 822 (1992), for the proposition that an applicant's interest in an adjoining lot is relevant in determining whether to grant a permit to an applicant. As a result, the plaintiff argues that, because consideration of an adjoining lot is relevant and § 22a-41 (a) requires consideration of "all relevant facts," the commission was required, in the present case, to consider the applicant's adjacent land.

---

[7] We note that the plaintiff's use of the word "adjoining" throughout her brief is misleading because, although the two parcels of land owned by the applicant are neighboring, they are separated by a brook. We do not, however, consider the difference to be relevant in the present case.

[8] General Statutes (Rev. to 1993) § 22a-41 (a) provides in relevant part: "[T]he commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:

"(1) The environmental impact of the proposed action;

"(2) The alternatives to the proposed action;

"(3) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity;

"(4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity;

"(5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and

"(6) The suitability of such activity to the area for which it is proposed."

In *Hoffman*, the commission unanimously denied the plaintiffs' request for a permit for "lot thirty-four" because " 'the proposed plan would result in a significant impact on the wetlands.' " Id., 264. In that case, the plaintiffs claimed that the commission should not have been permitted to consider their ownership of property adjoining lot 34. Id., 266. We reasoned that the statutory language permitting the commission's consideration of "all relevant facts and circumstances, including but not limited to" the six named factors enabled the commission to consider permits in context, rather than "as an entity unto itself." Id., 267. We reasoned that the legislative findings "recognize that wetlands and watercourses are 'an interrelated web of nature,' which must be protected and preserved." Id., quoting General Statutes § 22a-36. As a result, we concluded that consideration of adjoining property is relevant in determining whether to grant a permit, because "[t]o require a commission to regard each parcel with blinders, ignoring the overall development of an area and, in particular, the ownership of abutting parcels, would defeat the statute's purposes." *Hoffman* v. *Inland Wetlands Commission*, supra, 28 Conn. App. 267–68.

*Hoffman* does not *require*, as the plaintiff claims, the commission to consider adjoining land; rather, it merely permits the commission to consider adjoining land when such land is relevant. We agree with the plaintiff that the wetlands and watercourses must be preserved and protected, as we concluded in *Hoffman*. If, as in *Hoffman*, the commission is considering a proposal, the development of which will have a significant impact on the wetlands and watercourses, then consideration of adjoining land would be relevant in preserving and protecting the wetlands and watercourses and in determining whether a feasible and prudent alternative exists. Adjoining land becomes irrelevant, however, when the proposed development does not have a significant impact on the wetlands and watercourses.

Unlike lot 34 in *Hoffman*, where the commission found that its development would have a significant impact on the wetlands and watercourses, the lot that the applicant seeks to develop was specifically found to have an "acceptable," rather than a significant, impact on the wetlands and watercourses. The commission concluded, in the minutes from December 22, 1993, that "[t]he environmental impact of the proposed action as reflected in that the proposed activities will, as modified by the commission, have *no significant impact on the site's wetlands and watercourses* natural capacity to support desirable biological life, to prevent flooding, to supply water, to control sediment, to facilitate drainage and to promote public health and safety." (Emphasis added.)

In addition, the plan for lot 1 in the present case was to "correct erosion/pollution to wetlands caused by Town drainage." The applicant's plan for lot 2 would place a "house, drive, well and septic within 150' of channel or watercourse," but would affect "[z]ero acreage of wetlands." The plan for lot 3 would place a "septic . . . within 150' of the watercourse but wetlands [would not be] affected." The plan for lot 4 would place a "common driveway over wetlands, 0.04 acres of wetlands affected." As a result of these findings, the commission approved the applicant's plans.

If we required the commission to consider whether the applicant's adjacent land contained a feasible and prudent alternative, then the plaintiff would be allowed to dictate where an applicant can develop land even when the commission is satisfied that the subject property does not interfere with the wetlands and watercourses. As a result, we decline to require the commission to consider adjoining land owned by an applicant.

The judgment is affirmed.

In this opinion the other judges concurred.