[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
John F. Can, Jr. (the "Applicant") is the owner of a 24 acre unimproved parcel of land located on the east side of route 133 in the Town of Bridgewater (the "Property"). On or about October 27, 2000, the Applicant applied to the respondent, Conservation and Inland Wetlands Commission of the Town of Bridgewater (the "Commission"), for approval to conduct a regulated activity on the Property. The regulated activity consists of storm water discharge into a regulated area adjacent to wetlands that abut the southern portion of the Property. The regulated activity would occur in connection with the Applicant's proposal to subdivide the property into three lots which comprised approximately 16 acres of the 24 acre site. The additional site. The Applicant's proposal was to construct on the three lots on affordable housing development consisting of thirty-five dwelling units pursuant to General Statutes § 8-30g. CT Page 4333
For purposes of background, it should be noted that the first application made by Applicant for the Property was on January 3, 1997, which was denied by the Commission. This resulted in an appeal to this court, Can v. Conservation and Inland Wetlands Commission, Superior Court, judicial district of Litchfield, Docket No. 74340 (February 9, 1998, Pickett, J.), in which this court dismissed the Applicant's appeal finding substantial evidence in support of the Commission's decision.
The Applicant filed a second application in early 2000, which was subsequently withdrawn at the Commission's request to allow them time to retain an expert. A third application was filed again in 2000, which was the subject of a public hearing that took place on August 30, 2000. (Return of Record [ROR] P51A.) This application was withdrawn by the Applicant at the October 4, 2000 regular meeting of the Commission prior to rendering a decision (ROR P53).
The fourth application, which is the subject of this appeal was resubmitted on October 27, 2000 (ROR 1). The Applicant, at the November 1, 2000 meeting, requested the Commission consider the record from the third application in its proceedings on the fourth application. (ROR 25A). The Commission agreed to review the record and submissions of the prior third application along with the new material in the fourth application at the January 3, 2001 public hearing (ROR 24 p. 2). The Commission denied the Applicant's application at the February 7, 2001 regular meeting (ROR 26). The basis for the denial was "there being feasible and prudent alternatives." (ROR 26 p. 4). The Commission then articulated further, ". . . that the density of the project is excessive and examples of feasible and prudent alternatives would be to lessen the potential impact on the wetlands by reducing the scope of the project and/or spreading the units out over a longer area, including Lot A." (ROR 26 p. 4).
The Applicant appeals from the Commission's decision on the basis that density is outside the jurisdiction of the Commission and that there is no support in the record for the reasonable and prudent alternatives provided by the Commission. Therefore, the Applicant claims that the Commission acted illegally, arbitrarily and in abuse of its discretion.
 JURISDICTION AND AGGRIEVEMENT
General Statutes § 22a-43 provides this court with jurisdiction governing wetlands appeals. In particular it provides that: ". . . any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive. . . . may, within the time specified in subsection (b) of section 8-8 . . . appeal to the superior court for the judicial district where the land affected is CT Page 4334 located . . ."
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192 (1996). A plaintiff's status as owner of the subject property establishes aggrievement. Winchester Woods Associates v. Planning and ZoningCommission, 219 Conn. 303, 308 (1991). The Applicant is aggrieved as he is the owner of the property as evidenced by the warranty deed that was plaintiff's Exhibit one at the hearing on this matter.
 DISCUSSION
Municipalities have been statutorily entrusted with the authority to establish inland wetlands commissions to regulate activities affecting wetlands within their jurisdiction. General Statutes § 22a-42. This authority is the same as the authority of the Commissioner of the Department of Environmental Protection.
The factors for consideration by the local commission in regulating, licensing and enforcing the wetlands provisions are enumerated in General Statutes § 22a-41 (a) as follows:
 (a) In carrying out the purposes and policies of sections 22a-36 to 22a-45a, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:
 (1) The environmental impact of the proposed regulated activity on wetlands or watercourses;
 (2) The applicant's purpose for, and any feasible and prudent alternatives to, the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or watercourses;
 (3) The relationship between the short-term and long-term impacts of the proposed regulated activity on wetlands or watercourses and the maintenance and enhancement of long-term productivity of such wetlands or watercourses;
(4) Irreversible and irretrievable loss of wetland or watercourse resources which would be caused by the CT Page 4335 proposed regulated activity, including the extent to which such activity would foreclose a future ability to protect, enhance or restore such resources, and any mitigation measures which may be considered as a condition of issuing a permit for such activity including, but not limited to, measures to (A) prevent or minimize pollution or other environmental damage, (B) maintain or enhance existing environmental quality, or (C) in the following order of priority: Restore, enhance and create productive wetland or watercourse resources;
 (5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened by the proposed regulated activity; and
 (6) Impacts of the proposed regulated activity on wetlands or watercourses outside the area for which the activity is proposed and future activities associated with, or reasonably related to, the proposed regulated activity which are made inevitable by the proposed regulated activity and which may have an impact on wetlands or watercourses.
(Emphasis added.)
"Feasible" and "prudent" are defined in General Statutes § 22a-38
as follows:
 (17) "Feasible" means able to be constructed or implemented consistent with sound engineering principles;
 (18) "Prudent" means economically and otherwise reasonable in light of the social benefits to be derived from the proposed regulated activity provided cost may be considered in deciding what is prudent and further provided a mere showing of expense will not necessarily mean an alternative is imprudent.
The standard for review on an appeal from a decision of an inland wetlands commission was summarized in Forsell v. ConservationCommission, 43 Conn. App. 238, 243 (1996) as follows:
On an appeal from a decision of an inland wetlands CT Page 4336 commission to the Superior Court, "the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993). "The trial court must search the record of the agency hearings to determine whether there was an adequate basis for the inland wetlands commission's decision." Milardo v. Inland Wetlands Commission, 27 Conn. App. 214, 217-18, 605 A.2d 869 (1992). "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact at issue can be reasonably inferred. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . [A]n administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." (Citations omitted; internal quotation marks omitted.] Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-42, 525 A.2d 940
(1987).
See also, Samperi v. Inland Wetlands Agency, 226 Conn. 579, 588 (1993).
"In challenging an administrative agency action, the plaintiff has the burden of proof" Id., 587. In the trial court's review of an inland wetlands commission's decision, "[i]f the record provides such substantial evidence, the court should not substitute its judgment for that of the agency. Strong v. Conservation Commission, 28 Conn. App. 435,440 (1992). "The applicant, accordingly, must demonstrate to the local inland wetlands agency that its proposed development plan, insofar as it intrudes upon the wetlands, is the only alternative that is both feasible and prudent." Samperi v. Inland Wetlands Agency, supra, 226 Conn. 593. "Judicial review of the administrative process is designed to assure that CT Page 4337 administrative agencies act in a manner consistent with fundamental fairness." Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,552 (1987); Feinson v. Conservation Commission, 180 Conn. 421, 429
(1980).
The court in Samperi v. Inland Wetlands Agency, supra, 226 Conn. 596, concluded as follows:
 Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions. . . . This cautionary advice is especially apt whenever the court is reviewing a decision of a local commission composed of laypersons. . . .
(Citations omitted; internal quotation marks omitted.) See also; Woodburnv. Conservation Commission, 38 Conn. App. 166, 173-174 (1995).
The Supreme Court in Red Hill Coalition, Inc. v. ConservationCommission, 212 Conn. 710, 720-21 (1989) had opportunity to review General Statutes § 22a-41 (a) and concluded as follows:
 The plaintiff's point to General Statutes 22a-41 (a) (1) through (6) and argue that the legislature set forth six factors for consideration to circumscribe administrative discretion" and those six factors do not include consideration of "off-site factors." Section 22a-41 (a), however, also provides that municipal or district commissions "shall take into consideration all relevant facts and circumstances, including but not limited to: [the six factors enumerated in the statute.]"
The factors as enumerated in General Statutes § 22a-41 (a)(1) through (6) are not all inclusive. "An agency empowered to implement the wetlands act must, therefore, be vested with a certain amount of discretion in order to carry out its function." Id., 722; see also,Hoffman v. Inland Wetlands Commission, 28 Conn. App. 262, 267 (1992).
In Hoffman v. Inland Wetlands Commission, supra, 28 Conn. App. 267-268, the court further elaborated on the Red Hill case:
Our statutes do not require the commission to consider each application as an entity unto itself, devoid of any context. . . . Whether an owner seeking a permit CT Page 4338 has an interest in an adjoining lot is relevant to a determination of whether a permit should be granted.
 Indeed, the legislative findings in General Statutes § 22a-36 recognize that wetlands and watercourses are "an interrelated web of nature," which must be protected and preserved. To require a commission to regard each parcel with blinders, ignoring the overall development of an area and, in particular, the ownership of abutting parcels, would defeat the statute's purposes. The commission must be allowed to use its own knowledge of a site and local conditions, including other properties owned by the applicant, in its deliberations.
(Citations omitted.)
Finally, in Grimes v. Conservation Commission, 49 Conn. App. 95, 103, cert. denied, 247 Conn. 903 (1998) the court further distinguished theHoffman case as follows:
 Hoffman does not require, as the plaintiff claims, the commission to consider adjoining land; rather, it merely permits the commission to consider adjoining land when such land is relevant. . . . If, as in Hoffman, the commission is considering a proposal, the development of which will have a significant impact on the wetlands and watercourses, then consideration of adjoining land would be relevant in preserving and protecting the wetlands and watercourses and in determining whether a feasible and prudent alternative exists. Adjoining land becomes irrelevant, however, when the proposed development does not have a significant impact on the wetlands and watercourses.
With the aforementioned precedents to guide this court, the court reviews the record to determine if there is substantial evidence to support the Commission's decision.
The court finds that in the King's Mark Environmental Review Team Report (ROR, 22) regarding the Property prepared in May 1997, the first reference is made about the density of the project. At page 18 of the report it states as follows:
"On normally suitable 14 acre sites, a developer might expect to create 10 or 12 residential lots, each suitable for a three or four bedroom CT Page 4339 residence. Based upon those numbers, Joshua Heights (the "Property") represents a doubling or tripling of domestic sewage flows normally associated with development. The impact of this densely developed project has a potential for adversely affecting groundwater quality on and adjacent to the lots being developed. While this may adversely affect the water quality down gradient at the lower property line, the most critical aspect is protection of ground water supplies relied upon for development of potable wells."
Also, it should be noted that at page 17 of the report it states:
"Normally, large projects such as this would fall under the direct supervision of the Department of Environmental Protection which must review and approve all discharges to the ground water's of our State which exceed 5000 gallons per day. The three proposed residential developments total 89 bedrooms with a capacity to discharge approximately 13,000 gallons per day. What is unique about this site is that the developer indicated each of the proposed parcels will be owned by a separate corporation not associated with the other, therefore, each of the individual lots fall just under the 5000 gallon per day jurisdictional line thereby necessitating review for the three individual lots by State and Local Health Departments only."
This theme arises once again in the report P. Keith Vaughn, Registered Sanitarian, for the Town of Bridgewater, Building and Health Department in his letter of August 30, 2000. (ROR, P 39.) He found that the Applicant's proposal to divide the three lots into three separate legal entities was done to circumvent the normal DEP approval process which is more stringent than the local review and that this may very likely be detrimental to adjacent wetlands.
Finally, the Land-Tech Consultants, Inc. report of December 27, 2000 (ROR, 18), again reviews the Applicant's proposal and finds it is "well over the recommended developmental density." The Land-Tech report cites and supports the conclusions of the King's Mark Report. The Land-Tech report concludes; "[i]t is reasoned, therefore, that the project has the potential for adversely affecting groundwater quality on and adjacent to the developed lots."
These same issues were also raised by Russell J. DiRicnzo, the environmental consultant retained by the Commission in his report of September 23, 2000, to the Commission. (Supplemental Record, 36).
 CONCLUSION
Under its limited scope of review, this court cannot substitute its CT Page 4340 judgment for that of the Commission. There is substantial evidence to support the Commission's decision regarding the reduction in the density of the project and/or the feasible and prudent alternative of using the additional lot owned by the Applicant. Because there is nothing in the record to indicate the Commission acted illegally, arbitrarily or in abuse of its discretion, the Applicant's appeal is dismissed.
Agati, J.