[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The plaintiff, Maiolo Real Estate Investment Company, Inc., appeals pursuant to General Statutes § 22a-43 from a decision of the defendant, the Conservation and Inland Wetlands Commission of the Town of Somers. The defendant acted pursuant to its authority under the Inland Wetland and Watercourses Act, Chapter 440 of the Connecticut General Statutes, and denied the plaintiff's application for a construction permit for a single family residence on a subdivision residential lot owned by the plaintiff.
The present appeal, CV-9700641435, dated June 11, 1997, is consolidated[1] with an appeal submitted by the plaintiff in 1994, CV94-0055728S. The appeal concerns a parcel of property located in Somers, Connecticut known as Lot 801, Blue Ridge Estates, Section VIII, 35 Therese Drive. (Appeal, dated May 20, 1994, ¶ 2; Return of Record [ROR#2] for CV-970064143S, Item 2.) The single family residential building lot was purchased and approved as CT Page 5481 part of the subdivision in 1980. (Plaintiff's Brief, dated Sept. 15, 1995, p. 1; Return of Record [ROR#1] for CV94-00557285, Item 3B, p. 42; ROR#2, Item 6A, p. 7.)
Subsequent to the 1980 approval, the Town of Somers adopted setback requirements, embodied in Section 6.4 of the Somers Inland Wetlands and Watercourses Regulations, which granted the Commission the power to activities in buffer areas regulate beyond wetland boundaries. (ROR#2, Item 1, P. 10.) Specifically, regulation 6.4 required a 150 foot setback from the nearest edge of a wetland for a septic system, and a 50 foot setback for any building. (ROR#2, Item 1, pp .10-11.) In order for the plaintiff to construct a residence, it was required to submit an application for a permit to fill a portion of wetlands. (ROR#2, Item 1, p. 10-11.)
In 1994 the plaintiff, individually,[2] applied to the defendant for a permit to fill the wetlands to meet the buffer requirements of regulation 6.4 for the property. (Appeal, dated May 20, 1994, ¶ 4; ROR#2, Item 6A, p. 2.) Public hearings were held concerning the application. (ROR#1, Items 2E, 3d 3B.) On May 6, 1994 notice of the decision denying the application was published in the Journal Inquirer. (ROR#1, Item 2B.) The plaintiff appealed the decision.
The defendant filed a motion to dismiss the appeal based on subject matter jurisdiction on October 26, 1995. In January, 1995, the legislature adopted Public Act 95-313(f), codified as General Statutes § 22a-42a (f)(2), which requires municipal wetlands agency regulations to be in accordance with provisions adopted by the agency for activities in wetlands areas and directs that such regulations apply only to "those activities which are likely to impact or affect wetlands or watercourses." (Public Acts 1995, No. 95-313 § 3(f); see also ROR#2, Item 6A.) The 1994 appeal was stayed by agreement of the parties and the court in order to allow the plaintiff to formulate a new application according to the revised regulations. (Plaintiff's Motion to Consolidate, dated Jan. 14, 1998.)
By application dated December 6, 1996, the plaintiff submitted a new application to the defendant for a permit to construct a single family residence. (Appeal, dated June 11, 1997, ¶ 4.) The second application did not request permission to fill defined wetlands areas. (ROR#2, Item 5B; see also Plaintiff's Brief, dated February 4, 1998, p. 1.) CT Page 5482
Public hearings commenced in March, 1997, and concluded in May, 1997. (ROR#2, Items 3A-3D.) The defendant also conducted a site walk of the lot. (ROR#2, Item 6C.) At a meeting on June 4, 1997 the defendant denied the plaintiff's application; notice was published in the Journal Inquirer on June 17, 1997. (ROR#2, Item 3E.)
The citation and appeal were directed to the Town of Somers town clerk, the chairman of the Conservation and Inland Wetlands Commission of the Town of Somers, and the Commissioner of Environmental Protection. Service was made on June 13, 1997. I (Sheriff's Return, dated June 13, 1997.) The plaintiff appeals the decision of the defendant denying the application for a construction permit.
General Statutes § 22a-43 governs appeals taken from the decisions made pursuant to General Statutes §§ 22a-36 to 22a-45
inclusive (the "Inland Wetlands and Watercourses Act"), by an Inland Wetlands and Watercourses Agency to the superior court.
 II
"[I]n order to have standing to bring an administrative appeal, a person or entity must be aggrieved. . . . Aggrievement is a question of fact for the trial court and the plaintiff has the burden of proving that fact. . . . Pleading and proof of facts that constitute aggrievement are essential prerequisites to the trial court's subject matter jurisdiction over an administrative appeal. . . ." (Citations omitted; internal quotation marks omitted.) Water Pollution Control Authority v.Keeney, 234 Conn. 488, 493, 662 A.2d 124 (1995).
"The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . ." (Citations omitted; internal quotation marks omitted.) Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 530, 525 A.2d 940 (1987). CT Page 5483
In the present case, the plaintiff alleges in the appeal that it is "the legal owner of record a single family residential building lot . . . known as 35 Therese Drive, Lot #801, Blue Ridge Estates" in the Town of Somers, which is the parcel at issue. (Appeal, dated June 11, 1997, ¶ 2.) In addition, during the hearing on this appeal the plaintiff testified as to its legal ownership of the residential building lot. As such, the plaintiff has demonstrated a specific legal interest in the subject matter of the decision by the Commission which has been injuriously affected. Huck v. Inland Wetlands WatercoursesAgency, supra, 203 Conn. 530, therefore, aggrievement is found.
 III
General Statutes § 22a-43 provides that an aggrieved party may appeal the decision of an inland wetlands agency acting pursuant to the Inland Wetlands and Watercourses Act within fifteen days of the publication of the decision. General Statutes § 22a-43 (a) Notice must be served upon the inland wetlands agency and the commissioner. § 22a-43a (a)
In the present case, the Commission reached a decision on June 4, 1997. (ROR#2, Item 3E.) Notice was published on June 17, 1997 in the Journal Inquirer. (ROR#2, Item 3E.) Service providing notice of the appeal was made on June 13, 1997 to the town clerk, the chairman of the Somers Conservation Commission, and the State Commissioner of Environmental Protection. (Sheriff's Return, dated June 13, 1997.) Therefore, it is found that this appeal was commenced in a timely fashion by service of process upon the proper parties.
"In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . ." (Citations omitted.) Samperi v. Inland WetlandsAgency, 226 Conn. 579, 587, 628 A.2d 1286 (1993).
 IV
The plaintiff appealed the decision denying the application on numerous grounds, including that the defendant acted CT Page 5484 illegally, arbitrarily, and in abuse of discretion because it failed to identify a reasonable feasible and prudent alternative for the parcel of property; the regulations as applied are illegal and invalid; the denial of the permit constitutes a taking; and the determinations of the defendant were beyond the scope of its discretion. (Appeal, dated June 11, 1997.)
General Statutes § 22a-41 (b) provides in pertinent part: "In the case of an application which received a public hearing . . . a permit shall not be issued unless the commissioner finds on the basis of the record that a feasible and prudent alternative does not exist." The section further provides "[i]n the case of an application which is denied on the basis of a finding that there may be feasible and prudent alternatives to the proposed regulated activity . . . the commissioner or inland wetlands agency . . . shall propose on the record in writing the types of alternatives which the applicant may investigate provided thissubdivision shall not be construed to shift the burden from theapplicant to prove that he is entitled to the permit or topresent alternatives to the proposed regulated activity." (Emphasis added.) General Statutes § 22a-41 (b)(2).
"Pursuant to General Statutes § 22a-41 (b)(1), the commissioner must find that `a feasible and prudent' alternative to the applicant's development plan does not exist before issuing a permit. In making this finding, the commissioner `shall take into consideration all relevant facts and circumstances including but not limited to' the six statutory factors[3] in determining whether a feasible and prudent alternative exists. . . ." (Citation omitted.) Grimes v. Conservation Commission ofLitchfield, 49 Conn. App. 95, 102, 712 A.2d 984, cert. denied,246 Conn. 903 (1998), quoting General Statutes (Rev. to 1993) § 22a-41 (a). The plaintiff's burden, therefore, is to demonstrate that the decision is not supported by substantial evidence.Samperi v. Inland Wetlands Agency, supra, 226 Conn. 587.
"In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if `an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied CT Page 5485 in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . .'" (Citation omitted.) Samperi v. Inland Wetlands Agency, supra,226 Conn. 588-89, quoting Huck v. Inland Wetlands WatercoursesAgency, 203 Conn. 525, 540-42, 525 A.2d 940 (1987).
"[F]or a wetlands permit to issue, the local inland wetlands agency must determine that the alternative presented by the applicant is not only sound from an engineering standpoint but is also economically reasonable in light of the social benefits derived from the activity. . . . An alternative will be deemed to be a feasible and prudent alternative only if it meets both criteria. . . ." (Citation omitted.) Samperi v. Inland WetlandsAgency, supra, 595.
In the present case, the defendant unanimously denied the plaintiff's application on a number of grounds, namely, because the plan did not conform to the Somers Inland Wetlands and Watercourses Regulations (the Regulations), Section 7.4b, which requires that 1 any plan or revisions to a plan are certified by a soil scientist; signs were not posted regarding public hearings on this matter as required by Section 9.4 of the Regulations; feasible and prudent alternatives exist; the defendant had insufficient information to determine the extent of the disturbance involving the retaining wall and wetlands; and the construction would impact the wetlands because of the proximity of the construction to the wetlands, which the defendant found to be six feet or less. (ROR#2, Item 5F, p. 3-4.) The feasible and prudent alternatives advanced by the defendant included relocating the house further to the east, away from the edge of CT Page 5486 the wetlands, or removing the deck and garage in order to minimize the impact upon the wetlands. (ROR#2, Item 5F, p. 3.) The defendant also suggested that the house could be smaller, that the property could be sold to a neighboring property owner, or the property could be used for a purpose other than a developed lot. (ROR#2, Item 5F, p. 4.)
The plaintiff argues that he alternatives offered by the Commission are not feasible and prudent. (Plaintiff's Brief, dated February 4, 1998, p. 23.) Our Supreme Court, however, has stated that it is the plaintiff, not the commission, that must demonstrate that no feasible and prudent alternatives exist.Samperi v. Inland Wetlands Agency, supra, 593; see also Strong v.Conservation Commission, 226 Conn. 227, 229, 627 A.2d 431 (1993);Hoffman v. Inland Wetlands Commission, 28 Conn. App. 262, 265,610 A.2d 185, cert. denied, 223 Conn. 925, 614 A.2d 822 (1992). Moreover, General Statutes § 22a-41 (b)(2) expressly provides that while the Commission may suggest feasible and prudent alternatives, the burden remains with the applicant to demonstrate that no alternatives exist. General Statutes §22a-41 (b)(2). The plaintiff in this case did not prove that no feasible and prudent alternative exists.
The defendant argues that its decision is founded upon substantial evidence that there are feasible and prudent alternatives for this parcel. (Defendant's Brief, dated June 8, 1998, p. 6.) "Should substantial evidence exist in the record to support any basis or stated reason for the agency's decision, the court must sustain the decision." Keiser v. ConservationCommission, 41 Conn. App. 39, 41, 674 A.2d 439 (1996). The agency's decision will be upheld as long as the reviewing court finds one reason to support the decision. Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 525, 543, 525 A.2d 940
(1987).
"In evaluating whether the conclusions reached meet the substantial evidence standards, the credibility of witnesses is a matter within the province of the administrative agency. Huck v.Inland Wetlands Watercourses Agency, [203 Conn. 525, 540-41,525 A.2d 940 (1987).] An administrative agency is not required to 1 believe any witness, even an expert. . . . The agency is not required to use the evidence and materials presented to it in any particular fashion, as long as the conduct of the hearing is fundamentally fair. . . ." (Citations omitted; internal quotation marks omitted.) Bradley v. Inland Wetlands Agency, CT Page 548728 Conn. App. 48, 53-54, 609 A.2d 48 (1992).
The evidence in this case is derived from the questioning of the plaintiff's attorney, the plaintiff's engineer, and the soil scientist. In addition, the defendant listened to numerous questions, comments and concerns from members of public,[4] and conducted a site walk of the property prior to deciding the matter. The decision was based, in part, upon concerns expressed by various members of the commission to the plaintiff repeatedly during the public hearings. (ROR#2, Item 6A, p. 27; ROR#2, Item 6B, p. 6; ROR#2, Item 6C, pp. 26-29, 31-32.)
The plaintiff's soil scientist explained the background of this parcel. (ROR#2, Item 6A, pp. 17-18.) He stated that the wetland area at issue is a red maple swamp and that the ecological integrity of the area has decreased over the years due to development, such that it has less value for wildlife than it did prior to development, many years ago. (ROR#2, Item 6A, pp. 17-18.) The environmental concerns associated with this parcel of property that were discussed involved erosion control and sedimentation during construction. (ROR#2, Item 6A, p. 20-21.)
Significant concerns of the Commission regarding the parcel were whether the wetlands, which were mapped in 1994, were delineated properly, and whether that delineation accounted for the increased drainage into Wright's Brook caused by the local prison. (ROR#2, Item 6A, p. 63.) Due to such concerns the wetlands were mapped again. As a result, it was determined that the retaining wall[5] would be less than ten feet from the wetlands. (ROR#2, Item 6B, p. 8) The retaining wall, a conservation easement, and feasible and prudent alternatives were the topic of discussion at the May 7, 1997 hearing because members of the commission as well as the public voiced concerns regarding the potential impact upon the wetlands. (ROR#2, Item 6C.)
In its appeal the plaintiff argues that the Commission denied the application but failed to provide feasible and prudent alternatives for the property. (Appeal, dated June 11, 1997.) The defendant argues that its decision is based upon substantial evidence in the record, and that it suggested alternatives to the plaintiff during the public hearings, but that the applicant did not consider them. (Defendant's Brief, dated June 8, 1998, p. 7.)
During the public hearings, members of the Commission expressly suggested a reduction in the size of the house as a CT Page 5488 feasible alternative during. During the May 7, 1997 public hearing, Mr. Clifford, a member of the Commission, asked about the grading in back of the wall and was told that none was planned. Mr. Clifford also remarked that the conservation easement does not include all of the wetlands. . . . Mr. Clifford suggested: (1) grading at the rear of the lot be shown on the plan (2) reducing the size of the house to a two bedroom structure (3) all the wetlands should be included in the proposed conservation easement." (ROR#2, Item 5D; see also ROR#2, Item 6C, p. 27; ROR#2, Item 5F, p. 1.) Mr. Rondeau, another member of the Commission, questioned the impact of the construction upon the wetlands during and after construction. (ROR#2, Item 6D, p. 3.) He suggested that the house be moved further to the East side of the property or that a reduction in the size of the house or the bedrooms could be a feasible alternative. (ROR#2, Item 6D, p. 3.) The Commission suggested that there would be less of an impact upon the wetlands if the plaintiff refrained from building a deck and garage on the house. (ROR#2, Item 5F, p. 3.) Additionally, numerous members of the public voiced concern about erosion and wetlands problems and suggested a reduction in size of the house as an alternative. (ROR#2, Item 6A, pp. 44-45, 65; ROR#2, Item 6C, p. 21.) The plaintiff, however, did not discuss reductions in the size of the house, or the feasibility of other alternatives.
The plaintiff's engineer did not deny that the size of the house could be reduced. In the context of a discussion about the septic system for the property, he stated, "if the commission wants a different type of house . . . a different layout for the two bedrooms . . . it can be done." (ROR#2, Item 6D, p. 13.) He also stated, "you can make a smaller house, with fewer feet." (ROR#2, Item 6D, p. 12.) The plaintiff's attorney did not rebut assertions that the size of the house could be reduced.
The record contains evidence that shows that reducing the size of the house was an alternative. The plaintiff's engineer stated that "a smaller house could be put on there, but I think it's . . . in your interest that as large a house, as expensive a house be put on this site. . . ." (ROR#2, Item 6A, p. 78.) He further testified that the limiting factors for the construction of homes in the area are the wetland boundaries and the septic affluent. (ROR#2, Item 6A, p. 78.) Thus, the record shows no reason why the size of the house could not be reduced.
Members of the commission also suggested during the hearings CT Page 5489 that the property could be sold or that the property could be used for other than a residential home lot. (ROR#2, Item 5F, p. 1.) The record shows that the plaintiff provided no evidence as to why such suggestions were not feasible and prudent alternatives for the property. (ROR#2, Item 6C, p. 31.) The plaintiff provided testimony by the engineer and the soil scientist, however these individuals did not provide reasons why the size of the house could not be reduced, why the property could not be sold, or that there are no other uses for the property.
The record also reveals that members of the Commission expressed concerns regarding the fact that no grading was shown, which prevented the Commission from ascertaining the potential impact upon the wetlands. (ROR#2, Item 6C, p. 27.) One member of the Commission informed the plaintiff that it needed more information regarding the retaining wall in order to assess the impact upon the wetlands, "you need to have that wall defined in how it's going to be constructed . . . and what's going to be involved with that wall." (ROR#2, Item 6C, p. 29.) Another member stated that he was not convinced that there would be no impact upon the wetlands. (ROR#2, Item 6C, pp. 27-28.) Yet another member informed the plaintiff of her concerns regarding the wetlands delineation, the plaintiff's lack of discussion of feasible and prudent alternatives, and the plaintiff's failure to comply with certain technical requirements, despite numerous requests. (ROR#2, Item 6C, p. 31-32.)
At the May 7, 1997 hearing, after a site walk wherein the Commission inspected the site, a member of the Commission expressed additional concerns: "We feel strongly that the foundation of the house, in particular being close, almost on top of the . . . wetland line, there will be some impact to the wetland during construction. We questioned fill that would be brought in. Erosion, on the Northwest side of the house appears to be a probability. Where the [retaining] wall is being proposed, we also questioned the amount of fill coming in there and what erosion problems might happen. The reserve leachfield is also close to the wetland, and there could be erosion there because of the fill." (ROR#2, Item 6D, p. 2.) Another member questioned the impact of the construction upon the wetlands during and after construction. (ROR#2, Item 6D, p. 3.)
In its final decision, the Commission suggested alternatives which included relocating the house away from the wetlands, CT Page 5490 reducing the size of the house on the property, selling the property, or using the property for other purposes. (ROR#2, Item 5F, p. 3-4.) While the plaintiff presented evidence regarding the feasibility of relocating the house, it did not demonstrate that the size could not be reduced, that the property could not be sold, or that there were no other uses for the property.
It is found that the decision to deny the plaintiff's application was based on substantial evidence that feasible and prudent alternatives may exist. Also during the public hearings, members of the Commission suggested alternatives to the plaintiff which could have reduced the impact upon the wetlands. The plaintiff did not sustain its burden of presenting evidence to show that there were no feasible and prudent alternatives for this parcel of property. Based on the information and evidence before the Commission there may be feasible and prudent alternatives which precluded the Commission from granting the application under General Statutes § 22a-41.
Accordingly, the court finds that substantial record evidence exists to support the finding of the defendant. Therefore, the appeal is hereby dismissed.
Stengel, J.